5½  530

FILED

FEB 22

1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

2    Name ___Palmer_____Will_____M. III_____
         (Last)              (First)          (Initial)

3    Prisoner Number ___H-08789_____

4
5    Institutional Address __3000 W. Cecil Ave  Dealano Ca. 93216__

6    ================================================

7                    **UNITED STATES DISTRICT COURT**
                     **NORTHERN DISTRICT OF CALIFORNIA**

8    __Will Moses Palmer III_____
     (Enter the full name of plaintiff in this action.)

9                                            **CV  08      1089**

                    vs.                      )   Case No. _____
10                                           )   (To be provided by the clerk of court)
     A. Hedgpeth, KVSP Warden,               )
11   _____         )   **PETITION FOR A WRIT**    **SI**
                                             )   **OF HABEAS CORPUS**
12   _____         )                            **(PR)**
                                             )
13   _____         )
                                             )
14   (Enter the full name of respondent(s) or jailor in this action)  )
                                             )
15   _____         )

16   ================================================

17              Read Comments Carefully Before Filling In

18   When and Where to File

19          You should file in the Northern District if you were convicted and sentenced in one of these

20   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

21   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

22   this district if you are challenging the manner in which your sentence is being executed, such as loss of

23   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

24          If you are challenging your conviction or sentence and you were not convicted and sentenced in

25   one of the above-named fifteen counties, your petition will likely be transferred to the United States

26   District Court for the district in which the state court that convicted and sentenced you is located. If

27   you are challenging the execution of your sentence and you are not in prison in one of these counties,

28   your petition will likely be transferred to the district court for the district that includes the institution

     where you are confined. Habeas L.R. 2254-3(b).

     PET. FOR WRIT OF HAB. CORPUS        - 1 -

1 | Who to Name as Respondent

2     You must name the person in whose actual custody you are. This usually means the Warden or

3 jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4 you are imprisoned or by whom you were convicted and sentenced. These are not proper

5 respondents.

6     If you are not presently in custody pursuant to the state judgment against which you seek relief

7 but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9 was entered.

10 | A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11     1. What sentence are you challenging in this petition?

12     (a)   Name and location of court that imposed sentence (for example; Alameda

13     County Superior Court, Oakland):

14     Monterey County Superior     Salinas

15     Court         Location

16     (b)   Case number, if known   SS042154A

17     (c)   Date and terms of sentence   February 22, 2005

18     (d)   Are you now in custody serving this term? (Custody means being in jail, on

19     parole or probation, etc.)     Yes ____   No _x___
    Term is concecutive

20     Where?     to term currently being
    served

21     Name of Institution: <u>Kern Valley State Prison</u>

22     Address:  3000 W. Cecil Ave. Delano, Ca. 93216

23     2. For what crime were you given this sentence? (If your petition challenges a sentence for

24 more than one crime, list each crime separately using Penal Code numbers if known. If you are

25 challenging more than one sentence, you should file a different petition for each sentence.)

26 Resisting an Excutive Officer in Performance of Duties P.C §69

27

28

PET. FOR WRIT OF HAB. CORPUS    - 2 -

1    3. Did you have any of the following?

2            Arraignment:                          Yes _x___     No _____

3            Preliminary Hearing:              Yes _x___     No _____

4            Motion to Suppress:              Yes _____     No _x___

5    4. How did you plead?

6            Guilty _____     Not Guilty _x___     Nolo Contendere _____

7            Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9            Jury _x___     Judge alone_____     Judge alone on a transcript _____

10    6. Did you testify at your trial?              Yes _x___     No _____

11    7. Did you have an attorney at the following proceedings:

12        (a)    Arraignment                Yes _x___     No _____

13        (b)    Preliminary hearing        Yes _x___     No _____

14        (c)    Time of plea              Yes _N/A_     No _____

15        (d)    Trial                        Yes _____     No _x___

16        (e)    Sentencing                Yes _____     No _x___

17        (f)    Appeal                    Yes _x___     No _____

18        (g)    Other post-conviction proceeding     Yes _____     No _x___

19    8. Did you appeal your conviction?           Yes _____     No _____

20        (a)    If you did, to what court(s) did you appeal?

21               Court of Appeal             Yes _x___     No _____

22               Year: _2006_     Result: _affirmed_____

23               Supreme Court of California     Yes _x___     No _____

24               Year: _2007_     Result: _Denied_____

25               Any other court              Yes _____     No _x___

26               Year: _____     Result: _____

27

28        (b)    If you appealed, were the grounds the same as those that you are raising in this

|   |   |   |   |
|---|---|---|---|
| 1 | | petition? | Yes __X__   No____ |
| 2 | (c) | Was there an opinion? | Yes __X__   No____ |
| 3 | (d) | Did you seek permission to file a late appeal under Rule 31(a)? | |
| 4 | | | Yes __N/A__   No____ |
| 5 | | If you did, give the name of the court and the result: | |

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to this conviction in any court, state or federal?                              Yes __X__   No____

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that challenged the same conviction you are challenging now and if that petition was denied or dismissed with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit for an order authorizing the district court to consider this petition. You may not file a second or subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28 U.S.C. §§ 2244(b).]

(a)     If you sought relief in any proceeding other than an appeal, answer the following questions for each proceeding. Attach extra paper if you need more space.

I.     Name of Court: __Monterey County Superior Court__

Type of Proceeding: __Habeas Petition;__

Grounds raised (Be brief but specific):   see attached exh 1-2,

a._____

b._____

c._____

d._____

Result: __denied_____ Date of Result:__April  2007__

II.     Name of Court: __Court of Appeal__

Type of Proceeding: __Motion for Transcripts, Motion to proceed
in Pro-per,__

Grounds raised (Be brief but specific):   Habeas Corpus

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1        a. _see exh 1_____

2        b._____

3        c._____

4        d._____

5        Result: _pending____ Date of Result:_____

6   III.  Name of Court: _____

7        Type of Proceeding: _____

8        Grounds raised (Be brief but specific):

9        a._____

10       b._____

11       c._____

12       d._____

13       Result: _____ Date of Result:_____

14   IV.  Name of Court: _____

15       Type of Proceeding: _____

16       Grounds raised (Be brief but specific):

17       a._____

18       b._____

19       c._____

20       d._____

21       Result: _____ Date of Result:_____

22  (b)  Is any petition, appeal or other post-conviction proceeding now pending in any court?

23       Yes _x_  No____

24   Name and location of court: _Court of Appeal 6ht District_

25 **B. GROUNDS FOR RELIEF**

26 State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS   - 5 -

1 | need more space.  Answer the same questions for each claim.

2 |     [Note:  You must present ALL your claims in your first federal habeas petition.  Subsequent

3 | petitions may be dismissed without review on the merits.  28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4 | 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5 |     Claim One:___Denial of Right to Counsel as A result of Incomplete

6 | Marsden Hearing

7 | Supporting Facts:_____

8 |

9 |

10 |

11 | Claim Two:_____

12 |

13 | Supporting Facts:_____

14 |

15 |

16 |

17 | Claim Three:_____

18 |

19 | Supporting Facts:_____

20 |

21 |

22 |

23 |     If any of these grounds was not previously presented to any other court, state briefly which

24 | grounds were not presented and why:

25 |

26 |

27 |

28 |

PET. FOR WRIT OF HAB. CORPUS    - 6 -

## APPELLANT'S ARGUMENTS

## I

## THE COURT PREJUDICIALLY ERRED BY FAILING TO CONDUCT A FULL AND COMPLETE *MARSDEN* HEARING PRIOR TO TRIAL, BY DENYING APPELLANT'S MOTION FOR THE REPLACEMENT OF COURT-APPOINTED COUNSEL, AND BY GRANTING APPELLANT'S MOTION FOR SELF-REPRESENTATION

At a November 18, 2004, calendar call hearing before Judge Russell Scott, appellant specifically requested a *Marsden* hearing. (RT 1.) Out of the presence of the prosecutor, appellant explained to the judge that his attorney, Richard West, had failed to properly investigate the case or to interview important witnesses. He explained that Mr. West had missed four of the six or seven hearings in the case to date, and had forgotten about that day's hearing until contacted by phone. He complained that he was "not being represented effectively." (RT 2.) The judge indicated that he couldn't "get into the details of the defense," but asked Mr. West to comment. (RT 2.) West stated that his investigation was incomplete due to appellant's insistence on a speedy trial, which was currently set for November 29. West claimed that he "was in the process of interviewing some witnesses" and that his investigation was about "three quarters" complete. (RT 3.) Appellant interceded and told the judge, "that's not even everything." He complained that counsel had done nothing to pursue a *Pitchess* motion to obtain correctional officers' personnel files and records. (RT 4.) West stated that he had never discussed a *Pitchess* motion with appellant. Appellant interjected that he had

written letters to West regarding this discovery. Apparently changing his tune,

West replied that appellant had not insisted on a *Pitchess* motion at the time that

the trial date was originally set, and that appellant's demand for a speedy trial left

no time for a such a motion.[6]  (RT 4-5.)  The judge observed that the case

appeared "pretty simple," as it "took place in an open courtroom filled with

witnesses" and "I don't know what Pitchess has to do with that." He advised

appellant that his demand for a speedy trial and for counsel to prepare a *Pitchess*

motion were contradictory.  (RT 4.)  Appellant began to explain his further

frustrations over the stalled investigation, at which point the judge abruptly ruled

"[d]eny the *Marsden* motion."  (RT 5-6.)

The short transcript of this hearing plainly demonstrates that there was little

effort on the part of the court to hear, much less inquire into, each of appellant's

concerns over the competency of counsel or over a possible irreconcilable conflict

with his attorney. Nor did the judge take the time to fully consider the claims that

appellant made or to assess the implications of attorney West's statements in

defense of his representation. Eleven days later, in open court, after his *Faretta*

waiver was accepted by the court, appellant filed a pro per motion to disqualify

Judge Scott from the case. In his accompanying declaration, appellant referred to

the November 18 hearing, as well as other hearings in the case and in another case.

---

[6] Appellant was represented by attorney West before and at the September 3, 2004, preliminary hearing, where he was held to answer on the felony charges. (CT 4.) He waived time through counsel at his September 24, 2004 arraignment. (CT 5.2.) He withdrew his time waiver on October 26, 2004, and, on that date, the case was set for jury trial on November 29, 2004. (CT 5.4.)

He stated that Judge Scott had prevented him from presenting additional claims at the *Marsden* hearing that would have established Mr. West's ineffective assistance. Among appellant's list of complaints that Judge Scott failed to specifically consider on November 18th were attorney West's failure to interview important witnesses for the scheduled November 29 trial, his failure to move for *Pitchess* discovery in a timely manner, his failure to meet with appellant in order to discuss the defense (with the exception of one five minute non-confidential meeting), and his directive to the investigator to not investigate the officers' use of excessive force by interviewing construction workers and civilian witnesses. (CT 49-50.)

A proper inquiry by the judge at the *Marsden* hearing would have provided appellant with an opportunity to identify which key witnesses had not yet been interviewed. It would have probed defense counsel for a justification for these omissions. It would have probed the actual time line in the case for a meaningful assessment of the possible constraints of filing a *Pitchess* motion within 60 days of appellant's withdrawal of his time waiver. It would have probed the possible viability of *Pitchess* discovery in a more meaningful manner than simply accepting counsel's representation that he was never asked by appellant to pursue such discovery. It would have inquired of counsel whether and when appellant had written letters to him requesting that a *Pitchess* motion be filed. It would have inquired of counsel concerning the extent of other attorney-client contacts, and

whether appellant's representation of a single attorney-client interview (in a non-confidential setting) was true.

Plainly, the *Marsden* hearing in this case was extremely truncated and summary in nature. In his subsequent written motion to disqualify Judge Scott, appellant further stated that following the denial of his *Marsden* motion, he attempted to exercise his Sixth Amendment right to self-representation by bringing a *Faretta* motion, to which "Judge Scott acknowledged my motion to exercise my right to self representation, by looking at me with contempt and arising from the bench and exiting the courtroom." (CT 50.) On November 29, a further colloquy between appellant and Judge Scott broached this matter:

> THE COURT: Tell me what happened. You tell me what the facts are Mr. Palmer.
> DEFENDANT PALMER: We had a *Marsden* hearing.
> THE COURT: Yes.
> DEFENDANT PALMER: We was going through the *Marsden* hearing.
> THE COURT: That got concluded.
> DEFENDANT PALMER: You cut it off. You didn't let me finished. You denied that.
> THE COURT: Right.
> DEFENDANT PALMER: You said I'm not going to try to talk over you while you're talking, but you set the next court date. I was trying to let you know that if I can't get a new counsel, I wanted to represent myself at that time. I was prepared that day to submit my subpoenas.

(11/29/04 RT 262.)

Later, the judge clarified "Mr. Palmer, by the time you said you wanted to represent yourself, I was near that door. I may not have been out yet, court had been completed....There was no notice of any *Marsden* motion. You didn't file

any notice. You just decided right there and then that you were going to represent yourself. That's not the way court works." (11/29/04 RT 262.)

The judge's comments indicate a misunderstanding of *Marsden* procedure and demonstrate the mental state that resulted in an incomplete and prejudicial *Marsden* hearing. This, in turn, led to uninformed *Faretta* waivers by appellant, who chose self-representation over representation by apparently incompetent counsel. *Marsden* hearings are most commonly conducted without a noticed motion, since they are normally the product of an incarcerated defendant's dissatisfaction with counsel. It is imperative that each and every one of the defendant's concerns be heard. if not inquired into further. It is important for the court to exercise care and patience in these matters. as the defendant does not have legal training, is in an adversarial role with his own attorney. and is looking to the court to vindicate his Constitutional right to effective counsel. These considerations were ignored in the instant case, leading to prejudicial error that compels reversal of appellant's adverse judgment.

### A. *Marsden* Hearing Requirements

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the assistance of "effective" counsel. (*Gideon v. Wainwright* (1963) 373 U.S. 335, 342; *People v. Ibarra* (1963) 60 Cal.2d 460, 464.) A defendant "may be entitled to an order substituting appointed counsel if he shows that. in its absence, his Sixth Amendment right to the assistance of

counsel would be denied or substantially impaired." (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070, citing *People v. Marsden* (1970) 2 Cal.3d 118.)

In *Marsden*, the State Supreme Court held that when an indigent defendant requests a new court-appointed attorney, the trial court must afford him an opportunity to express the specific reasons why he believes he is not being adequately represented by his present counsel. (*Id.*, at 123-124.) Failure to hold a *Marsden* hearing when one is required amounts to a denial of the right to effective assistance of counsel. (*People v. Marsden, supra.* 2 Cal.3d at 126.)

Typically, a *Marsden* hearing is conducted outside the presence of the prosecutor so that neither the defendant nor counsel are inhibited from freely discussing the facts surrounding the specific allegations. (*People v. Madrid* (1985) 168 Cal.App.3d 14, 18-19.) Depending on the nature of the defendant's complaints, it may be necessary for the court to inquire further of the defendant (*People v. Miranda* (1987) 44 Cal.3d 57, 77) or of counsel (*People v. Turner* (1992) 7 Cal.App.4th 1214, 1219.) Normally, disagreement between trial counsel and the defendant over proper tactical decisions is not a basis for finding ineffectiveness and ordering the substitution of counsel. (*People v. Douglas* 50 Cal.3d at 520.) However, the court must have enough information to ascertain whether counsel's complained-of omissions were the result of discretion or neglect. (*People v. Hill, supra.* 148 Cal.App.3d at 753.) This might require, in appropriate circumstances, inquiry of counsel as to why he failed to subpoena

certain witnesses or produce certain evidence. (*Ibid.*; *People v. Turner, supra.* 7 Cal.App.4th at 1219; *People v. Groce* (1971) 18 Cal.App.3d 292. 296.)

A disagreement over trial tactics also may signal an irrevocable breakdown in the relationship between counsel and the defendant and signal the need for substitution, even if counsel has acted effectively. (*People v. Barnett* (1998) 17 Cal.4th 1044, 1095; *People v. Shoals* (1992) 8 Cal.App.4th 475. 497.) To decide if any conflict is irreconcilable, the court must determine whether the defendant has made a sustained good faith effort to work out any disagreements with counsel and whether the defendant has given counsel a fair opportunity to demonstrate trustworthiness. (*Id.,* at 1086; *People v. Crandell* (1988) 46 Cal.3d 833, 860.) In general, the court must attempt to understand the exact nature of the disagreement between the attorney and his client. (*In re Miller* (1973) 33 Cal.App.3d 1005, 1021.) The record should show the court "carefully inquired into defendant's reasons for requesting substitution of counsel...." (*People v. Memro, supra,* 11 Cal.4th at 857.)

When inquiry is complete, the court must consider each of the defendant's reasons and then exercise its discretion on whether to allow a substitution of attorney. (*People v. Douglas* (1990) 50 Cal.3d 468. 520.) "A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result." (*People v. Fierro* (1991) 1 Cal.4th 173, 204.)

between incompetent counsel and no counsel at all implicates the fundamental fairness and accuracy of the criminal proceeding and a showing of prejudice therefore is not required. (*Crandell v. Bunnell* (9th Cir. 1998) 144 F.3d 1213, 1216.)

B. The Court Failed to Conduct a Full and Complete Hearing

In the present case, there clearly was an antipathy between court and defendant that resulted in an extremely abbreviated *Marsden* procedure. First: the judge did not give appellant an opportunity to list all of his concerns and complaints regarding defense counsel. He solicited brief explanations from counsel regarding appellant's initial complaints, but never asked appellant if he had any follow-up comments regarding these issues. The judge did not ask any specific questions of appellant or counsel, preferring to keep the exchange as general as possible. His statement that he couldn't get into the "details of the defense" set extremely narrow and impractical parameters for the hearing, and led directly to an abuse of discretion. Several of appellant's complaints concerned motions that should have been made, or procedures that should have been undertaken by defense counsel. Jury trial was imminent. These details of the defense should have been the crux of the judge's proper exercise of discretion at the hearing.

The seven page record of the *Marsden* hearing reveals that appellant's concerns were serious ones that merited extended inquiry, analysis and evaluation. Defense counsel's incompetency and ineffective assistance plainly should have

been evident to the trial judge at the time of the hearing, and are manifest on review of the appellate record.[7]

For example, attorney West's explanations for his failure to file a timely *Pitchess* motion were insupportable. West argued that appellant never demanded that he file a *Pitchess* motion. Appellant countered that he had written to West about the need for a *Pitchess* motion. (RT 3-5.) Obviously, counsel's duty in providing reasonably effective assistance to his client operates independently of specific requests by the defendant regarding discovery. Police personnel records that might be used to impeach the credibility or character of peace officers was extremely important in this case. The incident occurred in open court, and the prosecution listed six peace officers who were on the scene as potential trial witnesses. (CT 63.) This was a daunting armada of uniformed witnesses who were likely to corroborate each others' testimony. Appellant's case hinged on his defense of the battery charges, but also of the resisting executive officer charges. These latter charges had the potential, which was ultimately realized, of

_____

[7] Since the court's *Marsden* error directly led to appellant's decision to represent himself, there is no requirement that appellant prove actual prejudice for purposes of review. (See *Crandell v. Bunnell, supra,* 144 F.3d at 1216.) Under these circumstances, proper ineffective assistance of counsel analysis is confined to the first prong of the *Strickland* standard; to wit, appellant must overcome "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" (*Ibid.*, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 689.) Moreover, since the incomplete *Marsden* inquiries left appellant (and the reviewing court) with crucial unanswered questions concerning counsel's representation, appellant's mere belief that counsel was incompetent is enough to render his subsequent *Faretta* waivers involuntary and nonintelligent. (*People v. Cruz, supra,* 83 Cal.App.3d at 317-319.)

engendering an indeterminate life sentence against appellant. The prosecution could be expected to argue that even appellant's slight physical resistance amounted to the requisite force for conviction on these charges. The defense needed to counter this potential evidence with proof that appellant acted reasonably in self-defense. This pitted the credibility of the appellant, who would be heavily impeached with his prior felony convictions, against that of the correctional officers and bailiff. If there was any indication in the officers' personnel files of violent behavior or of compromised credibility, it was absolutely vital for the defense to discover and employ this at trial.

Had defense counsel filed a timely *Pitchess* motion, there can be no doubt that it would have been granted. Under Evidence Code section 1043, there is a "relatively relaxed" standard for a showing of good cause in the underlying affidavits, which may be made by counsel on information and belief of "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought. (*Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25, 31; *Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84.) The records sought by appellant in his pro per The motion hastily prepared by appellant himself, which failed for lack of proper execution and service, appears viable and meritorious on its face. (CT 27-42; See also *People v. Gutierrez* (2003) 112 Cal.App.4[th] 1463,1473.) Plainly, competent counsel would have filed a timely, procedurally sound, and meritorious *Pitchess* motion on the facts and circumstances of the instant case.

As matters unfolded at trial, appellant's defense had extensive corroboration through the testimony of two prison inmates and appellant's former attorney, who were all in the courtroom at the time of the incident. However, the testimony of inmates Cummings and Moreno was impeached with their serious felony prior convictions, and the testimony of attorney Herro was somewhat marginalized as a result of his physical distance from the incident in the jury box, where appellant was quickly engulfed by officers. (RT 1120-1128, 1135-1144, 1167-1189.) Any advantageous *Pitchess* material could have been used to plant the seed that one or more of the officers initiated the incident by the use of excessive or unreasonable force against appellant, and that the other officers lent support to these claims out of loyalty. Indeed, given bailiff Earland's "Pit-bull" response to appellant's mere movement in the jury box and his subjective decision to remove appellant from the courtroom before he could obtain his important file records from replaced attorney Herro, the self defense justification was already viable.

These facts should have been self-evident to defense counsel from a review of the underlying police reports, and, certainly, in the wake of the preliminary hearing. They compelled pro-active discovery in the case. Attorney West clearly should have made this discovery a priority from the outset. Over nine weeks unfolded from the time of appellant's arraignment until the first scheduled trial date. (CT 5.2-5.4.) This was abundant time in which to file a *Pitchess* motion, and to obtain a discovery order and compliance. Moreover, had defense counsel

pursued this line of discovery on his own, discussed its importance with appellant, and made the appropriate and necessary requests of the court, there is little doubt that a trial date on or shortly before the 60 day cut-off date of December 26, 2004, could have been set. This would have provided sufficient time for even a belated *Pitchess* motion to be filed, and still be heard within the parameters of appellant's speedy trial demand.

Of course, a major question that remained unanswered after the *Marsden* hearing was whether counsel admitted that appellant had written to him regarding the need for a *Pitchess* motion, and if so, when that correspondence occurred, and what counsel's response was. This was not only a separate crucial component of a proper competency of counsel evaluation by the court on the issue of attorney-client contacts as a whole, it struck at the heart of the discovery complaints of appellant, as timely and effective communication between attorney and client on this particular point may well have resulted in an agreement to forego the speedy trial demand in light of the importance of the *Pitchess* discovery.

Another crucial area of inquiry that was omitted by the judge at the *Marsden* hearing concerned the interviewing of witnesses. Defense counsel claimed that his investigation was "three quarters" completed at the time of the hearing, which was eleven days before the scheduled trial. Five days after the *Marsden* hearing, and just six days before scheduled trial, attorney West filed a trial brief that failed to list key defense witnesses Mario Cummings and Juan Moreno, who were Salinas Valley State Prison inmates who were seated with

appellant in the jury box at the time of the incident, and who substantially corroborated appellant's testimony that officers initiated the use of unreasonable force against him. (CT 43-44 [trial brief]; RT 1120-1128 [Cummings testimony]; RT 1135-1144 [Moreno testimony].) These were crucial witnesses in this case. They were housed in a maximum security facility throughout these proceedings, and so, were not difficult to locate, interview or subpoena.

Additionally, after hearing appellant's initial general comments, and eliciting counsel's brief defense of his actions, the judge simply declared the hearing over without inquiring of appellant whether he had further complaints or comments. As the judge himself noted on November 29, appellant was attempting to put additional matters on the record, including his desire for self-representation, when the judge denied the motion, declared the hearing over, and left the courtroom. (11/29/04 RT 255-259.) Moreover, given the lengthy time period between arraignment and speedy trial cut-off date (approximately 13 weeks), the judge was incorrect in his assessment that appellant's demands were contradictory. The judge's comment that the case seemed "pretty simple" and his query of why *Pitchess* would even come into play, were a direct by-product of his erroneous reluctance to ascertain the "details of the defense" and were wholly belied by the nature of the evidence that was adduced at trial. Implementing crucial discovery, and interviewing key defense witnesses on a timely basis are fundamental tasks that are essential for reasonably professional assistance in a criminal case, particularly one that carries a potential indeterminate life term. (See *People v.*

*Rodriguez* (1977) 73 Cal.App.3d 1023. 1031.) They are tasks that can only assist the defense, and that have no conceivable downside. It is impossible to construct a plausibly sound trial strategy based on counsel's failure to perform these tasks. The court's brief inquiry into the matter occurred 55 days after appellant's arraignment and 11 days prior to scheduled trial. A complete inquiry. identification and assessment of all of the facts and circumstances properly in issue at the *Marsden* hearing would have alerted the court to the ineffective acts and omissions of defense counsel at the time of the hearing. and should have resulted in an order for the replacement of defense counsel. At a bare minimum. these competency issues should have alerted the court to the need for more careful and complete inquiries of appellant and defense counsel at the hearing. so that the court could exercise informed discretion with regard to appellant's claims.

      C. Appellant's *Faretta* Waiver was not Knowing or Intelligent

      On November 29. 2004. appellant appeared with defense counsel for scheduled jury trial. He advised the court that. based on its ruling at the *Marsden* hearing, he had filled out a written *Faretta* waiver and was prepared to represent himself in the forthcoming trial proceedings. Appellant reminded the judge that he was in the process of making a *Faretta* motion at the end of the *Marsden* hearing 11 days earlier when the judge "cut if off...didn't let me finish." The judge explained that "by the time you said you wanted to represent yourself. I was near that door...court had been completed." The court admonished appellant regarding the pitfalls of self-representation. accepted appellant's waiver. relieved

attorney West as defense counsel, and conferred pro per status on appellant.

(11/29/04 RT 255-259.) Appellant indicated that he still needed to subpoena his

witnesses. He filed a Code of Civil Procedure section 170.6 challenge of Judge

Scott as trial judge in open court. (11/29/04 RT 265-267.) The disqualification

motion was taken under submission and the matter was set for calendar call

hearing on December 9, 2004. (RT 268-269.)

In the wake of the incomplete and erroneously decided *Marsden* hearing,

appellant was left with the unenviable choice between apparently incompetent

appointed counsel and self-representation. In *People v. Cruz*, where the trial court

failed to conduct a full and complete inquiry at the underlying *Marsden* hearing,

the Supreme Court reversed the ensuing judgment, holding that the flawed

*Marsden* proceeding also tainted the *Faretta* waivers by the defendant:

> The knowing and intelligent waiver of counsel envisions the election
> between viable alternatives. Defendant's decision to proceed in pro per
> was predicated upon his belief, mistaken or not, that he could not expect
> effective representation from the public defender's office. This belief was
> effectively reinforced by the court's failure to fully explore defendant's
> charges. Under these circumstances, defendant cannot be said to have been
> fully apprised of his right to counsel and therefore did not effectively waive
> that right.
>
> (*Supra*, 83 Cal.App.3d at 318; See also *People v. Hill* (1983) 148
> Cal.App.3d 744, 755-756.)

Here, appellant's right to counsel was abridged in the same manner. As

demonstrated, *supra*, his claims of attorney incompetence in this case were bona

fide. But, as *Cruz* illustrates, a defendant's *mere belief* that counsel is ineffective,

coupled with the court's failure to fully explore his underlying claims of

incompetency, render a resulting decision by the defendant to waive appointed

counsel, and to proceed pro per, uninformed and ineffective. Under these

circumstances, it is unnecessary for appellant to establish any resulting prejudice

in the proceedings that followed. (See *Crandell v. Bunnell, supra,* 144 F.3d at

1216.)

Even if a showing of prejudice was required in this case, the standard for

Constitutional error would be met convincingly. Given appellant's acquittal of the

battery charge, and the contested nature of the evidence with regard to the resisting

executive officer charge, it follows that competent counsel fully engaged in

interviewing appellant and key witnesses, and armed with crucial discovery of

police personnel records, may well have tipped the scale toward full acquittal in

this close case. The fact that appellant representing himself managed to gain an

acquittal on the battery charge, suggests that competent counsel would have had a

strong chance of gaining an acquittal on the companion charge of resisting

executive officer. A diligent, competent investigation into the underlying

evidence regarding appellant's defense of reasonable self defense may well have

bolstered that defense. Defense counsel's shortcomings in this case belie that any

such diligence was undertaken here, and to the extent that this conclusion

speculates, it is a direct product of the court's improvident exercise of discretion at

the *Marsden* hearing in the first instance.

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3  of these cases:

4  _____

5  _____

6  _____

7  Do you have an attorney for this petition?                          Yes_____        No_x_

8  If you do, give the name and address of your attorney:

9  _____

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on ___*February 13, 2008*_____          _____

14              Date                                    Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 7 -



UNITED STATES POSTAGE

$ 01.31⁰
PITNEY BOWES
02 1A
0004604192    FEB 15 2008
MAILED FROM ZIP CODE 93215

US District Court Northern Dist.
450 Golden Gate Ave
San Francisco, CA. 94102

RECEIVED

FEB 19 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Kern Valley
Facility D, Building

Will of Palmer H-08789
KVSP D-8-120
P.O. Box 5104  D-8-120
Delano, CA  93216

LEGAL

5410233661 C004